## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **WILLIAM MATHEW WATSON,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )      **Case No. CIV-12-1079-D** |
| | ) |
| **CARL BEAR, Warden,**[1] | ) |
| | ) |
| **Respondent.** | ) |

### <u>REPORT AND RECOMMENDATION</u>

Petitioner William Mathew Watson, a state prisoner appearing pro se, has filed an Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus, challenging the constitutionality of his criminal conviction by the State of Oklahoma. *See* Doc. No. 23. Respondent, Warden Carl Bear, filed a Response to Amended Petition for Writ of Habeas Corpus (Doc. No. 28), to which Petitioner replied (Doc. No. 30). United States District Judge Timothy D. DeGiusti referred this matter to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636. As outlined herein, the undersigned recommends that the Amended Petition be DENIED.

---

[1] Because Petitioner is incarcerated at Joseph Harp Correctional Center ("JHCC"), the current JHCC Warden, Carl Bear, is hereby substituted as Respondent in this habeas proceeding. *See* R. 2(a), 12, Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"); Fed. R. Civ. P. 25(d), 81(a)(4); *Joseph Harp Correctional Center*, Okla. Dep't of Corr., http://www.ok.gov/doc/Organization/Field_Operations/East_Institutions/Joseph_Harp_Correctional_Center.html (last visited May 28, 2015).

# I. Relevant Case History and Issues Presented

In April 2010, Petitioner was charged by the State of Oklahoma in the District Court of Canadian County with one count of first-degree murder. Am. Pet. (Doc. No. 23) at 1;[2] *State v. Watson*, No. CF-2010-143 (Can. Cnty. Dist. Ct. filed Apr. 2, 2010).[3] On August 25, 2010, Petitioner appeared with counsel and pled guilty to the reduced felony charge of second-degree murder pursuant to a negotiated agreement with the State. Am. Pet. at 1; Plea of Guilty (Doc. No. 28-8); Plea Hr'g Tr. (*State v. Watson*, Aug. 25, 2010) (Doc. No. 28-10); *State v. Watson*, No. CF-2010-143 (Can. Cnty. Dist. Ct.) (docket entries of Aug. 26-27, 2010). Petitioner was sentenced to thirty years' imprisonment, suspended except for the first 25 years and with credit for time served. Am. Pet. at 1; *State v. Watson*, No. CF-2010-143 (Can. Cnty. Dist. Ct.) (docket entries of Aug. 26-27, 2010).

Petitioner thereafter timely moved to withdraw his guilty plea. *See* Pet'r's Second Am. Mot. to Withdraw Plea of Guilty (Doc. No. 28-1, at 1-2); *State v. Watson*, No. CF-2010-143 (Can. Cnty. Dist. Ct.) (docket entries of Sept. 1-3 and Sept. 22, 2010); Okla. Stat. tit. 22, ch. 18 app., R. 4.2(A). The trial court conducted a hearing, at which Petitioner appeared through new counsel, and denied Petitioner's request. Order Denying Mot. to Withdraw Plea of Guilty (Doc. No. 28-1, at 3-4); Vol. I Mot. to Withdraw Plea

---

[2] Citations to filings in this Court use the page numbers assigned by the Court's electronic filing system.

[3] The docket in Case No. CF-2010-143 is publicly available at http://www.oscn.net/dockets/GetCaseInformation.aspx?db=canadian&number=CF-2010-143.

Hr'g Tr. (*State v. Watson*, Sept. 23, 2010) (Doc. No. 28-11); Vol. II Mot. to Withdraw

Plea Hr'g Tr. (*State v. Watson*, Sept. 29, 2010) (Doc. No. 28-12).

After again obtaining new counsel, Petitioner appealed the denial through a

certiorari appeal to the Oklahoma Court of Criminal Appeals ("OCCA"). *See* Am. Pet. at

2, 12. The OCCA denied certiorari and affirmed Petitioner's judgment and sentence.

Am. Pet. at 2; OCCA Summ. Op. Denying Cert. (Doc. No. 28-3); *Watson v. State*, No. C-

2010-934 (Okla. Crim. App. filed Sept. 30, 2010).[4] Petitioner then filed a pro se

application for postconviction relief in the trial court, which was denied. Pet'r's

Postconviction Appl. (Doc. No. 28-4); Order Denying Postconviction Relief (Doc. No.

28-5). On May 10, 2012, Petitioner filed a pro se postconviction appeal with the OCCA.

Pet'r's Postconviction App. Br. (Doc. No. 28-6); *Watson v. State*, No. PC-2012-414

(Okla. Crim. App. filed May 10, 2012).[5]

On September 24, 2012, while his postconviction appeal still was pending before

the OCCA, Petitioner filed this federal habeas corpus action.[6] *See* Pet. (Doc. No. 1).

Respondent, citing the pending postconviction proceeding, moved to dismiss the Petition

as unexhausted; Petitioner moved to stay the habeas proceeding instead. *See* Doc. Nos. 7,

---

[4] The docket in Case No. C-2010-934 is publicly available at
http://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=C-2010-934.

[5] The docket in Case No. PC-2012-414 is publicly available at
http://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=PC-2012-414.

[6] The Petition is file-stamped September 28, 2012, but is deemed "filed" on September 24, 2012, when Petitioner gave it to prison authorities for mailing, as evidenced by the Petition's verification and certificate of mailing. *See* Pet. at 15; Section 2254 R. 3(d); *Fleming v. Evans*, 481 F.3d 1249, 1255 n.2 (10th Cir. 2007).

8, 10.  *See generally* 28 U.S.C. § 2254(b)(1)(A).  Magistrate Judge Gary Purcell issued a recommendation that both requests be denied because Petitioner had exhausted his state-court remedies on the sole claim raised in the initial Petition.  Report & Recommendation of Nov. 13, 2012 (Doc. No. 11).  Two days later, the OCCA affirmed the state trial court's denial of postconviction relief.  OCCA Postconviction Order (Doc. No. 28-7).  This Court then denied both dismissal and a stay of the habeas proceedings.  Order of Dec. 10, 2012 (Doc. No. 12).  Respondent then responded to the Petition, and Petitioner replied.  Doc. Nos. 16, 18.

Petitioner then requested and was granted leave to amend his habeas Petition.  Doc. Nos. 20, 21, 22.  After his superseding Amended Petition was filed, Respondent again responded, and Petitioner replied.  Doc. Nos. 23, 28, 30.  Respondent concedes that Petitioner's habeas claims are timely brought.  Resp't's Resp. (Doc. No. 28) at 2.  Respondent also states, "Petitioner exhausted the two issues in his amended petition through his post-conviction application to the Oklahoma Court of Criminal Appeals."  *Id.*

## II.    The Standard of Review

The Tenth Circuit has summarized the standard of review for evaluating state-court determinations that have been challenged in federal court through a 28 U.S.C. § 2254 habeas proceeding:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt.  If a claim has been "adjudicated on the merits in State court proceedings," we may not grant relief under § 2254 unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.

Under the "contrary to" clause of § 2254(d)(1), we may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted).

Pursuant to AEDPA, factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The standard for relief prescribed by AEDPA is high: "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

### III. Analysis

As grounds for each of his federal habeas claims, Petitioner restates and refers to the two propositions of error raised in his Postconviction Application (Doc. No. 28-4). *See* Am. Pet. at 5, 6. The undersigned has considered this Application together with the Amended Petition and has liberally construed all of Petitioner's pro se filings as part of a careful review of "the facts and the pleadings" in order "to ascertain what occurred in prior state proceedings and the true nature of Petitioner's claims" and to ensure "substantial justice." *See Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

### A. Ground One: Ineffective Assistance of Appellate Counsel

#### *1.* Strickland *Standard*

Claims of ineffective assistance of counsel in violation of the Sixth Amendment are analyzed under the familiar two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668. "First, [Petitioner] must show that counsel's performance was deficient." *See id.* at 687. To satisfy this prong, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness," or, in other words, that counsel's performance "was not within the range of competence demanded of attorneys in criminal cases." *See id.* at 687-88 (internal quotation marks omitted). There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

With respect to the second prong of the analysis, Petitioner must show that *but for* counsel's unprofessional errors, there is a reasonable probability that the result of the

proceeding would have been different. *See id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.

*Harrington*, 562 U.S. at 111-12 (citations and internal quotation marks omitted). "In the context of an ineffective assistance of appellate counsel claim," satisfaction of this prejudice prong "means the defendant must show a reasonable probability that, but for his counsel's unreasonable failure to raise a particular nonfrivolous issue, he would have prevailed on his appeal." *Milton v. Miller*, 744 F.3d 660, 669 (10th Cir. 2014) (internal quotation marks omitted).

### 2. *Analysis*

In Ground One of his habeas action, Petitioner argues that he was deprived of his Sixth Amendment rights under the United States Constitution due to the ineffective performance of his counsel on certiorari appeal. As support, Petitioner asserts that his appellate counsel failed to raise in the certiorari appellate brief all of the grounds that had been included in his trial-court Second Amended Motion to Withdraw Plea of Guilty and in the Petition for Writ of Certiorari, and that this failure was prejudicial to his appeal.

Am. Pet. at 5-6; Pet'r's Reply (Doc. No. 30) at 2-9; Pet'r's Postconviction Appl. at 3-7;

Pet'r's Postconviction App. Br. at 3-7; *see* Pet'r's Second Am. Mot. to Withdraw Plea of

Guilty at 1 (listing substantive reasons "a" through "h" in support of withdrawal of plea).

Petitioner specifically notes the omission from the certiorari appellate brief of ineffective

assistance of trial counsel as a basis for permitting Petitioner to withdraw his guilty plea.

Pet'r's Postconviction App. at 4; *see* Pet'r's Cert. App. Br. (Doc. No. 28-2) (raising as

sole proposition of error that Petitioner's plea was not knowing, voluntary, and freely

entered).

In his Postconviction Application, Petitioner alleged that his appellate counsel was

ineffective due to these omissions. *See* Pet'r's Postconviction Appl. at 3-7 (Proposition

I). The trial court denied relief, finding that the Postconviction Application was "based

upon issues which could have and should have been raised on direct appeal of this

matter." Order Denying Postconviction Relief at 1. The OCCA recognized the error of

the lower court's disposition, explaining: "By its very nature, a claim that a convicted

person received ineffective assistance of counsel on appeal is a claim that normally

cannot be raised in the direct appeal itself." OCCA Postconviction Order at 3-4. The

OCCA nonetheless denied relief on the merits:

> Petitioner has not established, before either this Court or the District Court,
> that he received ineffective assistance of appellate counsel.
>
> . . . .
>
> In Proposition I of his Application, the deficient performance that
> Petitioner attributes to his appellate counsel is that the attorney on
> Petitioner's direct appeal brief did not raise propositions of error
> corresponding to each of the grounds of error listed in the Petition for Writ

of Certiorari. Other than this circumstance, however, Petitioner offers little more to establish that his appellate counsel was constitutionally ineffective.

Although Petitioner correctly notes that errors mentioned in a petition for writ of certiorari will be forfeited if not presented in the supporting brief's propositions of error, Petitioner fails to establish that the grounds forfeited by being omitted from the Brief-in-Chief had support within the record and would have had merit were they raised in that Brief on appeal. Petitioner therefore has not demonstrated that the omission of those alleged errors deprived him of the assistance of counsel to which he was constitutionally guaranteed. Simply showing that an allegation was not raised on appeal does not alone prove ineffective assistance of appellate counsel. A post-conviction applicant must prove the error in fact occurred, that the error would have resulted in relief on appeal had his appellate counsel properly presented it, and that counsel's omission of the error on appeal could not be considered reasonable professional assistance.

OCCA Postconviction Order at 4-7 (footnotes omitted) (citing *Strickland*, 466 U.S. at 694); *see also id.* at 5 n.4 (noting that the attorney who filed the Petition for Writ of Certiorari was not the same attorney who filed the appellate brief and that the attorney who filed the Petition for Writ of Certiorari was required by OCCA rule to list therein the errors that had been urged to the trial court in the request to withdraw the guilty plea).

Respondent argues that Petitioner's Ground One is waived as a result of being inadequately developed. Resp't's Resp. at 10-12 (citing *Thomas v. Gibson*, 218 F.3d 1213 (10th Cir. 2000)). The undersigned, having considered the allegations of the Amended Petition together with Petitioner's postconviction filings and his habeas Reply, disagrees and finds that the argument is not "so superficially developed" as to be deemed waived. *See Thomas*, 218 F.3d at 1224 n.9; Am. Pet. at 5-6; Pet'r's Postconviction Appl. at 3-7, 10; Pet'r's Postconviction App. Br. at 3-7, 10; Pet'r's Reply at 2-9. Applying the

law outlined above to the facts of Petitioner's case, however, Petitioner has not shown any prejudicial performance on the part of his appellate counsel.

Petitioner's operative motion to withdraw his guilty plea included the following eight substantive reasons for allowing withdrawal:

a.  The Defendant asserts that he is innocent;
b.  The Defendant lacked close assistance of counsel;
c.  The Defendant lacked effective assistance of counsel;
d.  The plea was entered through inadvertence, ignorance, mistake, or coercion;
e.  The plea was not voluntarily and intelligently entered into by the Defendant;
f.  The Defendant was not mentally competent to enter a plea;
g.  The Defendant was not mentally competent at the time of the act charged;
h.  The sentence imposed upon Defendant was excessive and contrary to the evidence presented.

Second Am. Mot. to Withdraw Plea of Guilty at 1. This motion offered only these bare assertions, however, and contained no actual argument or facts in support. *See id.* at 1-2.

The argument raised to the OCCA in the certiorari appellate brief encompassed Grounds "d" and "e," leaving Grounds "a"-"c" and "f"-"h" as those omitted from Petitioner's appellate brief on certiorari appeal. *See* Pet'r's Cert. App. Br. at 5-10. Nowhere in the postconviction proceedings or in this habeas action, however, has Petitioner pointed to factual support in the record that was before his appellate counsel for these six remaining grounds or offered legal argument specifically regarding these grounds. *See generally* Okla. Stat. tit. 22, ch. 18 app., R. 3.5(A) (requiring appellant's brief to be supported by citations to the record). Instead, Petitioner proposes that appellate counsel committed error simply by virtue of failing to raise every conceivable

basis for relief.  *See* Am. Pet. at 5; Pet'r's Postconviction Appl. at 4-7.  It is well-established, however, that such an exercise of discretion by an appellate attorney does not, by itself, amount to constitutionally ineffective assistance.

> A defendant does not have a "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment[,] decides not to present those points. . . .[ . ]Legal contentions, like the currency, depreciate through over[-]issue."  "[W]innowing out weaker arguments" is not a constitutionally deficient practice and, indeed, is the hallmark of effective advocacy.

*Tapia v. Tansy*, 926 F.2d 1554, 1564 (10th Cir. 1991) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Smith v. Murray*, 477 U.S. 527, 536 (1986)).  "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal [that] are more likely to succeed." *Jackson v. Shanks*, 143 F.3d 1313, 1321 (10th Cir. 1998).

Petitioner's argument also appears to rest upon the contention that his appellate counsel's failure to reurge all eight arguments in the brief was contrary to the OCCA's own rules.  Pet'r's Reply at 6 (citing OCCA Rule 4.2, Okla. Stat. tit. 22, ch. 18 app., R. 4.2).  Whether this is so, however, does not affect the merits of Petitioner's federal habeas claim.  In a habeas action, a federal court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "[F]ederal habeas corpus relief does not lie for errors of state law" such as the alleged rule violation noted by Petitioner.  *See id.* at 67 (internal quotation marks omitted).

Further, the record does not reflect that Petitioner was prejudiced by the omission of certain grounds from his appellate brief. Under Oklahoma law, "a guilty plea waives all previous non-jurisdictional defects." *Berget v. State*, 824 P.2d 364, 372 (Okla. Crim. App. 1991); *see also United States v. Salazar*, 323 F.3d 852, 856 (10th Cir. 2003) ("'When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not [competent].'" (alteration in original) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *Braun v. State*, 909 P.2d 783, 796 (Okla. Crim. App. 1995) ("'The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision.'" (quoting *Brady v. United States*, 397 U.S. 742, 757 (1970)). Rather than including multiple arguments that were possibly extraneous or impermissible, Petitioner's appellate counsel focused the brief upon a thorough challenge to the fundamental, threshold issue of the knowing and voluntary nature of the guilty plea, including discussion of the allegedly limited and coercive nature of the advice Petitioner had received from his trial counsel. *See* Pet'r's Cert. App. Br. at 5-10. The OCCA addressed that claim on the merits, *see* OCCA Summ. Op. Denying Cert. at 1-2, and Petitioner does not offer any reasoned explanation of how his attorney's strategic decision prevented him from prevailing on appeal. *See Jones v.*

*Gibson*, 206 F.3d 946, 959 (10th Cir. 2000) (holding that appellate counsel is not ineffective for failing to raise a meritless claim).

To establish prejudice, Petitioner "must show a reasonable probability that, but for his counsel's unreasonable failure to raise a particular nonfrivolous issue, he would have prevailed on his appeal." *Milton*, 744 F.3d at 669 (internal quotation marks omitted). Petitioner's conclusory argument, accompanied by almost no factual support, has not reasonably shown that any of the omitted issues were nonfrivolous, let alone that their omission prevented him from prevailing on his appeal to the OCCA. *Compare* Ground "h" of Postconviction Appl. (asserting that Petitioner's 30-year sentence was excessive and contrary to the evidence), *with* Okla. Stat. tit. 21, § 701.9(B) (prescribing a sentence of 10 years to life for second-degree murder); *compare* Grounds "f" and "g" of Postconviction Appl. (asserting that Petitioner was not mentally competent at the time of the crime or of the plea), *with* Vol. I Mot. to Withdraw Plea Hr'g Tr. at 7 (Petitioner testifying that he was mentally competent when he entered his guilty plea and equivocating as to whether he was mentally competent at the time of the charged offense). Therefore, Petitioner cannot show that his appellate counsel's performance was prejudicial. *See Harrington*, 562 U.S. at 111-12; *Jones*, 206 F.3d at 959. Because Petitioner has failed to demonstrate that he was prejudiced by his appellate counsel's performance, the undersigned need not address whether that counsel's performance was deficient with regard to the issues raised on appeal. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Here, Petitioner does not defeat any reasonable argument that his appellate counsel was effective under *Strickland*, and the OCCA's rejection of this claim was neither contrary to nor an unreasonable application of that governing authority. *See Strickland*, 466 U.S. at 687-95; 28 U.S.C. § 2254(d)(1); OCCA Summ. Op. Denying Cert. at 1-2. Relief on this basis should be denied.

**B. Ground Two: Ineffective Assistance of Trial Counsel**

Petitioner claims that his trial counsel was constitutionally ineffective with respect to Petitioner's acceptance of the plea offer from the State, which rendered Petitioner's guilty plea involuntary. Am. Pet. at 6-8; Pet'r's Postconviction Appl. at 8-9; Pet'r's Postconviction App. Br. at 8-9. Liberally construed, Petitioner argues that his trial counsel told him that the State had advised that they would prosecute Petitioner's uncle and pastor as coconspirators unless Petitioner accepted the reduced plea. Pet'r's Postconviction Appl. at 8. Petitioner asserts that his trial counsel "was acting angry toward" Petitioner because Petitioner "kept declining to accept the plea offer from the District Attorney." *Id.* Petitioner therefore claims that his trial attorney "coerc[ed]" the guilty plea. Am. Pet. at 6.

Petitioner first raised this claim in his Postconviction Application. Pet'r's Postconviction Appl. at 8-9 (Proposition II). The trial court denied relief, holding that the Application was "based upon issues which could have and should have been raised on

direct appeal of this matter." Order Denying Postconviction Relief at 1; *see also* Okla.

Stat. tit. 22, § 1086 ("Any ground . . . knowingly, voluntarily and intelligently waived . . .

in any . . . proceeding the applicant has taken to secure relief may not be the basis for a

subsequent application . . . ."). The OCCA affirmed, likewise finding the claim

procedurally barred:

> "Proposition II" of the Application . . . contended that [Petitioner's] trial
> counsel at the plea and sentencing "coerced" his guilty plea "through
> District Attorney's threat of third party prosecution without probable
> cause." Because of this alleged coercion, Petitioner argued that his trial
> counsel's assistance was constitutionally ineffective.
>
> Claims made in post-conviction proceedings that could have been
> raised on direct appeal but were not are waived. *Woodruff v. State*, 1996
> OK CR 5, ¶ 2, 910 P.2d 348, 350. Claims that were raised and decided in a
> petitioner's direct appeal are barred as res judicata. *Paxton v. State*, 1996
> OK CR 4, ¶ 2, 910 P.2d 1059, 1061. This Court will not consider issues
> barred by res judicata or issues that have been waived. *Boyd v. State*, 1996
> OK CR 12, ¶ 3, 915 P.2d 922, 924; *Stiles v. State*, 1995 OK CR 51, ¶ 2, 902
> P.2d 1104, 1105.
>
> In the final order denying Petitioner's Application for Post-
> Conviction Relief, Judge McCurdy found that Application was "based upon
> issues which could have and should have been raised on direct appeal."
> Judge McCurdy therefore denied that Application. Although not stating as
> much, Judge McCurdy has obviously denied this Proposition II claim on
> the basis that it was precluded from being raised by those procedural bars
> of waiver and res judicata cited above.
>
> As concerns Judge McCurdy's disposition of his ineffective-
> assistance-of-trial-counsel claim, Petitioner in this appeal simply re-asserts
> his allegations of coercion and continues to argue the merits of that claim.
> Judge McCurdy, however, did not deny that claim on the merits, but instead
> denied it on the procedural ground that it was a claim precluded by post-
> conviction procedures because it was based on issues that could have been
> raised on direct appeal. Consequently, Petitioner's arguments concerning
> the underlying merits of his ineffective-assistance-of-trial-counsel claim do
> nothing to explain how it was error for the District Court to deny that claim
> for procedural reasons that never reached the merits. As Petitioner has not
> shown error in that decision, he has not shown grounds for reversal of

Judge McCurdy's order as concerns its disposition of Proposition II of the Application.

OCCA Postconviction Order at 2-3 (citations omitted).

Respondent argues that Petitioner is precluded from obtaining habeas relief on Ground Two because the OCCA found this claim to procedurally barred. *See* Resp't's Resp. at 17-27. A federal habeas claim may be barred by a petitioner's procedural default in state court "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "The [independent and adequate state ground] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-30.

When the underlying claim is ineffective assistance of trial counsel, the Tenth Circuit has recognized that countervailing concerns justify an exception to the general rule of procedural default. The Oklahoma state court's procedural bar applies to ineffective assistance of counsel claims not raised on direct appeal only if certain conditions are met:

> [T]he Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone.

*English v. Cody*, 146 F.3d 1257, 1264 (10th Cir. 1998); *see also Spears v. Mullin*, 343 F.3d 1215, 1252 (10th Cir. 2003) (clarifying that for the second condition to be met, "either the defendant's ineffective-trial-counsel claim could be resolved solely on the trial

record before the direct-appeal court or the defendant could have expanded the direct-appeal record to present his ineffective-assistance claim adequately").

Here, Plaintiff was represented by one attorney at his plea proceedings, by another attorney at the hearing on his motion to withdraw the guilty plea, and by yet another attorney on his certiorari appeal brief to the OCCA. Am. Pet. at 12; Plea of Guilty (Doc. No. 28-8) at 1, 5; Vols. I, II Mot. to Withdraw Plea Hr'g Tr.; Pet'r's Cert. App. Br. at 1, 11. In addition, Petitioner's allegation of coercion by his trial counsel was raised and was fully explored, with corresponding development of the evidentiary record, prior to the filing of the certiorari appeal, in the evidentiary hearing on Petitioner's request to withdraw the guilty plea. *See* Pet'r's Second Am. Mot. to Withdraw Plea of Guilty at 1; *see, e.g.*, Vol. I Mot. to Withdraw Plea Hr'g Tr. at 7, 16-18, 24-25, 29-30, 32, 79. Both *English* requirements are therefore satisfied, and the undersigned will consider whether Petitioner's habeas claim is barred from consideration based on the OCCA's finding of procedural default.

The OCCA's dismissal of this claim on postconviction appeal was based on both an independent and an adequate state procedural ground. The OCCA's imposition of a procedural bar was an "independent" state ground because it was "separate and distinct from federal law" and "the exclusive basis for the state court's holding." *See Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir. 1995); OCCA Postconviction Order at 2-3; Okla. Stat. tit. 22, § 1086. "A state court finding of procedural default is adequate if it is strictly or regularly followed." *Maes*, 46 F.3d at 986 (internal quotation marks omitted). The Tenth Circuit has recognized that Oklahoma's bar on raising claims for

postconviction relief that could have been raised on direct appeal is an independent and adequate state bar. *See Smith v. Workman*, 550 F.3d 1258, 1267 (10th Cir. 2008); *Hale v. Gibson*, 227 F.3d 1298, 1330 (10th Cir. 2000). As a result, federal habeas corpus review of Petitioner's Ground Two is precluded absent a showing by Petitioner of either: (1) cause for the default and actual prejudice, or (2) that a fundamental miscarriage of justice will result if Petitioner's claims are not considered. *See Coleman*, 501 U.S. at 750; *Hale*, 227 F.3d at 1330.

"Cause" under the cause-and-prejudice analysis "must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 752. As described above, and liberally construed, Petitioner points to ineffective assistance of his appellate counsel as cause for the failure to raise Ground Two on certiorari appeal. Am. Pet. at 5; Pet'r's Postconviction Appl. at 4. Attorney error amounting to constitutionally ineffective assistance of counsel under the Sixth Amendment may constitute cause as would be required to excuse a procedural default. *Coleman*, 501 U.S. at 753-54. In addition, by way of his postconviction appeal Petitioner presented his ineffective assistance of appellate counsel argument "as an independent claim to the state court," as required for Petitioner to rely upon this argument as cause. *Gonzales v. Hartley*, 396 F. App'x 506, 508-09 (10th Cir. 2010) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)); *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that an ineffective assistance claim "asserted as cause for the procedural default of another claim can itself be procedurally defaulted").

Accordingly, the undersigned undertakes review of the merits of Petitioner's underlying claim—i.e., that his trial counsel coerced him into accepting the plea—in the context of his ineffective assistance of trial counsel claim and his assertion of cause. *See Smith*, 550 F.3d at 1267. "Because the same legal standards govern petitioner's underlying claim of ineffective assistance of counsel and his closely related burden to show cause for his state law procedural default, [the Court] must determine whether petitioner has shown cause concurrently with the merits of his ineffective assistance of counsel claim." *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998). The undersigned concludes that, for the reasons outlined below, this underlying claim is meritless, and Petitioner cannot rely upon his ineffective-appellate-counsel claim as cause for his state-law procedural default.

Petitioner undisputedly signed under penalty of perjury a written Plea of Guilty, in which he confirmed that he understood "the nature and consequences" of the proceeding, the applicable ranges of punishment for first- and second-degree murder, and that he was giving up certain rights by entering a plea of guilty. Plea of Guilty at 1-3. Further, Petitioner swore his agreement that he had talked over the charge with his attorney, that his attorney had effectively assisted him, that he had not been "forced" to enter the plea, and that he pled guilty of his "own free will and without any coercion or compulsion of any kind." *Id.* at 3-4. Petitioner also signed a statement confirming that his waiver of his right to a preliminary hearing was "completely voluntary" and that he had "not been mistreated or coerced in any way." Statement of Def. (Doc. No. 28-9) at 1.

At the plea hearing, Petitioner was asked whether anyone had forced or coerced him in any way to enter his guilty plea, and he stated "[n]o." Plea Hr'g Tr. at 5-6. And at the hearing on Petitioner's request to withdraw his plea, Petitioner testified that he had been given the opportunity to consult with his attorney, along with the attorney's investigator, before he entered his guilty plea on August 25, 2010. Vol. I Mot. to Withdraw Plea Hr'g at 8-9. On that date, Petitioner's counsel explained the difference between being charged with first-degree murder and being charged with second-degree murder, including the elements of the crimes and the different possible sentences. *Id.* at 11-12; *accord id.* at 90-92. Petitioner's counsel also discussed the facts of the case, the evidence expected from the State and the strength of the State's case, and his opinion as to the possible consequences of Petitioner being tried for first- or second-degree murder. *Id.* at 12-14. When asked exactly how he was coerced by his attorney or the investigator into signing a waiver of his preliminary hearing, Petitioner responded only that those individuals told Petitioner if he did not sign: (1) he could get life in prison or the death penalty—which Petitioner admitted was a correct statement; and (2) that Petitioner's uncle and pastor could be charged with conspiracy. *Id.* at 16-17.

Petitioner testified that he reviewed the written Plea of Guilty with his attorney prior to signing and that his attorney explained the form to Petitioner whenever he had a question. *Id.* at 22-23. Petitioner did not tell his family members or the trial judge at any time that he did not want to enter a guilty plea and never told his family that he had been coerced or forced by his attorney to enter such a plea. *Id.* at 27-28, 32. Petitioner agreed that he was "happy" and "pretty excited" to receive a deal with 25 years' time to serve.

*Id.* at 28-29.  Petitioner was "satisfied with [his] representation" at the plea hearing and told a family member after the hearing that he had received a "pretty good" sentence.  *Id.* at 32-35.  Petitioner testified that prior to the plea hearing his counsel had told him there was a 50 percent chance that if he went to trial, he would be either acquitted or convicted of a lesser charge than first-degree murder.  *Id.* at 50-53.  Petitioner agreed that counsel and the investigator were not "twisting [his] arm" to take the plea.  *Id.* at 53.

Petitioner's trial attorney testified that he had been practicing law for 25 years and had represented capital defendants through the Oklahoma Indigent Defense System for four years.  *Id.* at 63-64, 96.  He stated that he met with Petitioner "seven or eight" times to discuss the case prior to entry of the plea on August 25, 2010.  *Id.* at 66-67, 69-70.  Petitioner's trial attorney obtained discovery materials from the District Attorney's office, including police and laboratory reports and crime scene photographs, and met with Petitioner "at length" regarding these materials.  *Id.* at 67-68.  He stated that he did not have difficulty discussing the case with Petitioner, other than Petitioner becoming emotional.  *Id.* at 68-69.  Petitioner's trial attorney testified that Petitioner "[a]bsolutely" asked questions and discussed facts and evidence regarding the case, that he was able to provide Petitioner with answers, and that Petitioner seemed to understand the answers that he gave.  *Id.* at 69.  Petitioner's attorney denied putting any pressure on Petitioner to enter a plea of guilty to first-degree murder prior to the date of the plea hearing.  *Id.* at 70.  Petitioner's counsel arrived at court on the morning of August 25, 2010, expecting to have a preliminary hearing on the charge of first-degree murder, but then met with the District Attorney and received the State's offer.  *Id.* at 70-71.

Petitioner's counsel further testified that when he told Petitioner on August 25, 2010, that the State was willing to make a sentence recommendation of 30 years in prison, with five years suspended, Petitioner "appeared to be elated" and "very pleased" with the State's sentence recommendation. *Id.* at 74-75, 97. According to Petitioner's counsel, Petitioner said, "Praise Jesus," and stated to two deputies, "Hey, I just bought me a 25-year ticket." *Id.* at 74, 97. Petitioner's counsel testified that Petitioner never expressed any reservations about pleading guilty or any concern that the recommended sentence was too long. *Id.* at 75-76. Petitioner's counsel stated that Petitioner "was told repeatedly that it was his decision and his decision alone." *Id.* at 76; *see also id.* at 92-93 (Petitioner's counsel denying any "threat" being made to Petitioner).

Petitioner's counsel stated that while Petitioner and he were reviewing the written Plea of Guilty on August 25, 2010, Petitioner did not express any desire to delay or any concerns about giving up certain rights. *Id.* at 77. Petitioner's counsel explained Petitioner's right to a preliminary hearing and that Petitioner would be waiving that right. *Id.* at 78-79. Petitioner's counsel denied doing anything in any way to coerce Petitioner into signing the waiver of preliminary hearing. *Id.* at 79. Petitioner's counsel affirmed that he went through "each and every" question on the Plea of Guilty with Petitioner and did not have any concerns that Petitioner did not understand what he was doing. *Id.* at 79-80. Petitioner's counsel "went in further depth and detail explaining to him what each of those individual rights were and what they gave him or what they afforded him and what he would not be afforded were he to enter this plea." *Id.* at 80. Nothing indicated to Petitioner's counsel that Petitioner "didn't understand what was going on" or had any

questions about the rights he was giving up by entering his plea of guilty. *Id.* at 81. Although Petitioner stated that his counsel spent only 20 or 30 minutes with him before entry of the plea, Petitioner's counsel testified that he spent approximately four hours at the courthouse on the morning of August 25, 2010, including one-and-a-half hours discussing and completing the written Plea of Guilty form with Petitioner. *Id.* at 10, 82-83, 95-96.

Considered as a whole, the record on this issue does not reasonably reflect undue "coercion" on the part of Petitioner's trial counsel. As a related issue, Petitioner, through separate counsel, specifically argued that his plea was not knowing, voluntary, and freely entered to the OCCA on certiorari appeal. Pet'r's Cert. App. Br. at 5-10. Although this argument was cast as a violation of due process rather than of the Sixth Amendment, Petitioner's certiorari appeal brief described in detail how his trial counsel allegedly "pressured" and "coerced" Petitioner into accepting the plea. *See id.* at 5-6, 9-10. Petitioner also argued that he did not understand the significance of waiving a preliminary hearing, that he "was under the belief that he had ten days to 'pull' his plea," and that his trial counsel did not equip him with "all the sufficient answers that [he] needed." *Id.* at 5-6. The OCCA rejected Petitioner's claim on the merits, finding no abuse of discretion in the trial court's denial of the request to withdraw the guilty plea. OCCA Summ. Op. Denying Cert. at 1-2. The OCCA stated: "The district court's

decision that Watson entered his plea knowingly, voluntarily and with a full understanding of the consequences is supported by the record." *Id.*[7]

While not determinative, the OCCA's rejection of Petitioner's claim that his plea was involuntary certainly erodes Petitioner's ability to show prejudice from the performance of trial counsel (or, from appellate counsel's omission of an ineffective-trial-counsel claim on certiorari appeal). In other words, even if the OCCA had reached the merits of Petitioner's ineffective-trial-counsel claim, granting relief on that ground would have been inconsistent with that court's express holding that Petitioner's plea was not unknowing or involuntary (and implicit rejection of any argument that trial counsel's actions had resulted in an involuntary or unintelligent plea).

---

[7] In his initial Petition, Petitioner raised as his sole ground for relief the claim that his guilty plea was not voluntary, knowing, and freely entered, in violation of his due process rights. *See* Pet. at 5-7. In his Amended Petition, Petitioner expressly adopts the two arguments raised in his Postconviction Application, both of which were recognized as ineffective-assistance arguments by the OCCA rather than as presenting a freestanding due process claim based upon an involuntary guilty plea. *See* Am. Pet. at 5-8; OCCA Postconviction Order at 2-6. Most reasonably and liberally construed, the Amended Petition does not reurge the due process claim raised in the initial Petition; the coerced and involuntary nature of the plea is cited only as support for Petitioner's Sixth Amendment ineffective-assistance-of-trial-counsel argument. *See* Am. Pet. at 6; Pet'r's Postconviction Appl. at 8-9. Respondent's Response likewise asserts that Petitioner "dropped his original issue" in the Amended Petition, and Petitioner does not challenge this contention in his Reply. *See* Resp't's Resp. at 2; Pet'r's Reply. That said, even if the Amended Petition had again raised the due process claim, the limited record before the Court (as described in Part III.B) reflects that the OCCA's rejection of this claim on the merits was not contrary to or an unreasonable application of clearly established federal law and was not based upon an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d); *Hill v. Lockhart*, 474 U.S. 52, 56 ("The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." (internal quotation marks omitted)).

Further, Petitioner's accusation of "coercion" is directed as much, if not more, at the Canadian County District Attorney as at his own trial counsel. The allegation that Petitioner's trial counsel relayed to Petitioner that the District Attorney would prosecute third parties unless Petitioner accepted the plea deal, even if true, does not reflect coercion by Petitioner's trial counsel but rather a communication of that attorney's understanding of the prosecutor's intentions in the course of advising Petitioner. *See* Pet'r's Postconviction Appl. at 8. Even if the State's intentions were improper, Petitioner's trial counsel's simple transmittal of this fact does not amount to coercion on the *defense* side of the case.

As outlined above, Petitioner cannot show that his trial counsel's performance was deficient or that, but for trial counsel's errors, there is a "reasonable probability" of a different outcome. *Harrington*, 562 U.S. at 104, 111-12. It follows that appellate counsel's performance was not deficient or prejudicial in failing to raise these meritless ineffective-assistance claims on certiorari appeal. *See Dennis v. Poppel*, 222 F.3d 1245, 1250 (10th Cir. 2000). "[T]he Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal." *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995). Petitioner therefore has not shown that ineffective assistance of his appellate counsel constitutes cause for his failure to raise his ineffective assistance of trial counsel claims on certiorari appeal. Absent a showing of cause, there is no need for the Court to consider the existence of actual prejudice. *See Steele v. Young*, 11 F.3d 1518, 1522 n.7 (10th Cir. 1993).

As Petitioner has not shown cause and prejudice to excuse his procedural default, he must show that a fundamental miscarriage of justice will result absent consideration of his Ground Two. *See Coleman*, 501 U.S. at 750; *Steele*, 11 F.3d at 1522. The fundamental miscarriage of justice exception is "extremely narrow," "implicated only in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993) (internal quotation marks omitted). To prevail, Petitioner must identify evidence that "affirmatively demonstrate[s] his innocence." *See id.*; *see also Steele*, 11 F.3d at 1522 (noting that a petitioner must supplement his constitutional claim with "a colorable showing of factual innocence"). At the hearing on Petitioner's motion to withdraw his guilty plea, Petitioner answered in the affirmative when asked if he was "asserting [his] innocence to this charge," but other than this bare response, the testimony and other evidence spoke to the circumstances of Petitioner's plea deal and not whether he was factually innocent of the alleged murder. Vol. I Mot. to Withdraw Plea Hr'g at 6; *cf. id.* at 90-92 (Petitioner's trial counsel testifying that Petitioner was pleased about the second-degree murder charge because "it was very important to him to not acknowledge any intent" to kill the victim). Petitioner identifies no evidence that demonstrates his factual innocence of murder, and neither the record before this Court nor Petitioner's arguments with respect to his guilty plea would support such an actual-innocence claim. The fundamental miscarriage of justice exception is therefore inapplicable. Accordingly, Petitioner's state-court procedural default of Ground Two precludes habeas review thereof, and Petitioner is not entitled to federal habeas relief on this claim.

## RECOMMENDATION

For the reasons set forth above, it is recommended that the Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. No. 23) be DENIED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by June 19, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 29th day of May, 2015.

Charles B. Goodwin
_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE